## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGEL SOTO,** | : | **CIVIL NO. 1:CV-10-02366** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS LESKOWSKY,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

On November 16, 2010, Plaintiff Angel Soto ("Soto"), an inmate currently

confined at the State Correctional Institution in Dallas, Pennsylvania ("SCI-Dallas"),

filed a civil rights complaint pursuant to the provisions in 42 U.S.C. § 1983.  (Doc. 1.)

Named as Defendants are a number of prison officials and medical personnel at SCI-

Dallas.[1]  In his complaint, Soto alleges that on March 18, 2008, while working in the

mattress factory at SCI-Dallas, he sustained an injury to his right bicep muscle.  He

further avers that after initially receiving treatment at the infirmary, the subsequent

treatment he received was unnecessarily delayed.  This delay, Soto claims, caused his

bicep injury to become inoperable and caused him to lose functionality in his arm.

---

[1]  Named as Defendants are Thomas Leskowsky, former Director of Corrections Health Care Services; Patricia Ginocchetti, former Corrections Health Care Administrator; Kim Harris, Nurse; Renee Waligun, Nurse; Jerome Walsh, Deputy Superintendent for Centralized Services; Michael Klopotoski, former Superintendent; Bureau of Health Care Services; Richard Ellers, Director, Bureau of Health Care Services; Stanley Bohinski, M.D. Medical Director; and Don O'Brien, Physician Assistant.

Before the court are two motions to dismiss the complaint, filed by two sets of Defendants.  (Docs. 10 & 19.)  For the reasons set forth below, the motions will be granted in part and denied in part.

## I.   **Background**

### A.   **Facts**

In the complaint, Soto provides the following factual background with respect to his claims.  The court notes that for purposes of disposition of the instant motions to dismiss, the factual allegations asserted in the complaint will be accepted as true and viewed in a light most favorable to Soto.

In his complaint, Soto alleges that on March 18, 2008, sometime between 2:00 p.m. and 3:00 p.m., while working in SCI-Dallas' mattress factory, he felt something "'pop' in his arm and he also felt a burning sensation in his bicep muscle." (Doc. 1-1 at 3.)  He informed the foreman, and was permitted to go to the prison infirmary at that time. (*Id.*)  At the infirmary, he was examined by Defendants Nurse Harris, Physician Assistant O'Brien, Health Care Administrator Leskowsky, with Defendant Nurse Waligun also present. (*Id.*)  According to Soto, these Defendants recognized an injury to his arm "which included an obvious visual deformation in the appearance of

2

[Soto's] bicep muscle which had snapped."  (*Id*.)  Soto was prescribed Ibuprofen for his injury.  (*Id*. at 5.)

The following day, Soto was summoned to sick call and advised to perform light work duties for a few weeks.  (*Id*.)  In addition, an appointment was made for Soto to see a physical therapist on March 26, 2008.  (*Id*.)  However, he was not seen by a physical therapist until April 7, 2008.  (*Id*.)  The therapist's recommendation was for therapy and surgery on his right arm.  (*Id*.)

Nearly two months after the injury, on May 8, 2008, Soto was seen by an outside orthopedic surgeon, a Dr. Raklewicz, as ordered by Defendant Dr. Bohinski, SCI-Dallas' Medical Director.  (*Id*. at 5, 6.)  Dr. Raklewicz referred Soto to another orthopedic surgeon, a Dr. Mattucci, whom he saw the following day, May 9, 2008. (*Id*. at 5.)  Soto states that both Drs. Raklewicz and Mattuci diagnosed him with a "right proximal bicep rupture."  (*Id*.)  He also avers that both doctors "clearly informed [him] that nothing could be done for him because the prison waited <u>too</u> late to send him out for surgery." (*Id*. at 5) (emphasis in original).  Finally, he avers that as a result of "inordinate delay in receiving necessary surgery to repair the ruptured muscle in his arm," he will suffer "an irreparable injury of anywhere from 5% to 10% of his strength in his right arm."  (*Id*.)

Based on the foregoing allegations, Soto asserts a claim that Defendants have been deliberately indifferent to his medical needs in violation of his Eighth Amendment right against cruel and unusual punishment.  Specifically, he makes the following claims against certain Defendants.  Initially, he claims that Defendants Nurses Waligun and Harris witnessed his injury on March 18, 2008, but remained silent rather than alert prison medical supervisory staff that he would require surgery within a few days.  (*Id*. at 5-6.)  Further, he claims that Defendants Ginocchetti, Leskowsky, and Bohinski, former Health Care Administrator, Director of Health Care Services, and Medical Director, respectively, were on duty on March 18, 2008, and knew that Soto had sustained an injury that would require immediate surgery, yet remained silent.  (*Id*. at 6.)  Additionally, he claims that Defendant Walsh, a Deputy Superintendent, knew of Soto's injury because he responded to a related grievance report, yet "stood silent" and did not recommend immediate surgery.  (*Id*.)  He also claims that Defendants Walsh and Klopotoski, a former Superintendent, "had layman's knowledge [that Soto] required immediate surgery to repair the tear."  (*Id*.)

Soto also alleges that all Defendants "had discussions among themselves about [Soto]'s condition but agreed to stay silent and acquiesce in not recommending immediate surgery to repair [Soto]'s muscle."  (*Id*.)  To that end, he asserts that "the

4

Bureau of Health Care Services for the Dep't of Corrections has implemented a policy or adopted a custom of agreeing not to recommend immediate surgical repairs of traumatic muscle injury, or tendon, to avoid excessive healthcare costs for prisoners." (*Id*.)  Also, he claims that this policy "was to pursue a less efficacious course of treatment based upon the state budget crisis and their belief that prisoners are expendable and do not merit adequate healthcare."  (*Id*. at 7.)  More specifically, he claims that "Defendants, in order to have the appearance of conforming their conduct to law, implemented a policy or custom to schedule consults with outside specialist, but so remote from the injury, as to know in advance that the specialist would not recommend any surgery."  (*Id*.)  In a related claim, he asserts that "Defendants Walsh and Klopotoski, along with the Bureau of Health Care Services, entered into an agreement with the medical staff, in particular the Corrections Health Care Administrator and the Medical Director, to disallow surgical repair of . . . traumatic muscle, tendon, or ligament injuries within the optimal period recognized by the medical community as affording the most chance of success, *i.e.* within at least three to seven days of the initial injury."[2]  (*Id*.)  Finally, he claims that Defendant Ellers, the Director of the Bureau of Health Care Services, "implemented and approved a policy

---

[2]  He also alleges that these same parties entered into an agreement to disallow funding for such surgical repairs.  (Doc. 1-1 at 7.)

to pursue a less efficacious course of treatment for prisoners who experience a serious muscular injury . . . ."  (*Id.* at 7-8.)

### B.    Procedural History

Soto filed his complaint on November 16, 2010.  (Doc. 1.)  After waiving service of the complaint, (*see* Doc. 9), Defendants Bureau of Health Care Services, Ellers, Ginocchetti, Harris, Klopotoski, Leskowsky, Waligun, and Walsh ("DOC Defendants"), filed a motion to dismiss the complaint on February 3, 2011, (Doc. 10). Defendants Bohinski and O'Brien ("Medical Defendants") also waived service of the complaint, (*see* Docs. 13 & 14), and filed a motion to dismiss the complaint on March 8, 2011 (Doc. 19).  Soto has filed a brief in opposition to the motions, (Doc. 26), but neither set of Defendants filed reply briefing.  Thus, the motions are ripe for disposition.

## II.    Standard of Review - Motion to Dismiss

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Fair notice" in Rule 8(a)(2) "depends on the type of case – some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "[A] situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8."  *Id*.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief.  *Twombly*, 550 U.S. at 555; *accord*, *e.g.*, *Phillips*, 515 F.3d at 231-32; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (the court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).  *See also Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (recognizing that Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (quoting *Twombly*, 550 U.S. at 555).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure

to state a claim upon which relief can be granted.  In deciding a motion to dismiss

under Rule 12(b)(6), the court is required to accept as true all of the factual allegations

in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), and

all reasonable inferences permitted by the factual allegations, *Watson v. Abington

Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to

the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007).  *Accord Phillips*,

515 F.3d at 233.  If the facts alleged are sufficient to "raise a right to relief above the

speculative level" such that the plaintiff's claim is "plausible on its face," a complaint

will survive a motion to dismiss.  *Twombly*, 550 U.S. at 555, 570; *Phillips*, 515 F.3d at

234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*,

495 F.3d 62, 66 (3d Cir. 2007).  *See Iqbal*, 129 S. Ct. at 1949 (explaining a claim has

"facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged").

Further, when a complaint contains well-pleaded factual allegations, "a court should

assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." *Id*. at 1950.  However, a court is "not bound to accept as true a

legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at

8

555).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements do not suffice."  *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint and matters of public

record."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192,

1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263,

268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that

a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are

based on the [attached] document[s]."  *Pension Benefit*, 998 F.2d at 1196.

Additionally, "documents whose contents are alleged in the complaint and whose

authenticity no party questions, but which are not physically attached to the pleading,

may be considered."  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d

Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d

383, 388 (3d Cir. 2002) ("Although a district court may not consider matters

extraneous to the pleadings, a document *integral to or explicitly relied* upon in the

complaint may be considered without converting the motion to dismiss into one for

summary judgment.") (internal quotation omitted).  However, the court may not rely

on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient.  *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   Discussion

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).[3] A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability. *Id.*

In the instant case, both sets of Defendants argue that the applicable statute of limitations bars Soto's claims against them. Both sets of Defendants also argue that Soto has failed to state a claim for a deliberate indifference to his medical needs. In

---

[3] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

addition to these arguments, Medical Defendants contend that (1) if construing the complaint as asserting a state law claim for medical professional liability, such a claim fails for Soto's failure to timely file a certificate of merit, and (2) the court should not exercise supplemental jurisdiction over any possible remaining state law claims.  The court will address these arguments in turn.  Finally, the court will address Soto's claim that a policy or custom existed to avoid the costs associated with the medical care of prisoners.

### A.    <u>Statute of Limitations</u>

Both sets of Defendants argue that the applicable statute of limitations bars Soto's claims against them.  They argue that the statute of limitations began to run on March 18, 2008, the date of Soto's right bicep injury, or, in the alternative, on May 9, 2008, the date of the alleged delay in treating his injury.  Soto did not file his complaint until November 16, 2010, over two years after the injury.

For claims brought pursuant to § 1983, federal courts must apply the statute of limitations for analogous state actions.  *Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 457 n.9 (3d Cir. 1996).  Section 1983 claims are analogous to personal injury tort actions and are subject to the state statute of limitations governing such claims. *287 Corporate Ctr. Assocs. v. Twp. of Bridgewater*, 101 F.3d 320, 323 (3d

Cir. 1996).  The governing law here is Pennsylvania's two-year statute of limitations.
42 Pa. Cons. Stat. Ann. § 5524.  The statute begins to run when a plaintiff knew or
should have known of the violation of his rights.  *Bougher v. Univ. of Pittsburgh*, 882
F.2d 74, 80 (3d Cir. 1989).  A statute of limitations defense may be raised through a
12(b)(6) motion only if it is clear from the face of the complaint that the action would
be time barred.  *Benak v. Alliance Capital Mgmt.*, L.P., 435 F.3d 396, 400 n.14 (3d
Cir. 2006).

      At first glance, it would appear that Soto's claims against Defendants are time
barred.  However, various courts of appeals, as well as district courts in the Third
Circuit have concluded that the statute of limitations is tolled for the time period
during which a prisoner exhausts his administrative remedies pursuant to the Prison
Litigation Reform Act ("PLRA").  *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir.
2005); *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001); *Brown v. Morgan*, 209
F.3d 595, 596 (6th Cir. 2000);  *Collins v. Derose*, Civ. No. 1:CV-08-0744, 2009 WL
812008, at *2-3 (M.D. Pa. Mar. 26, 2009); *Houseknecht v. Doe*, No. 06-4597, 2007
WL 1853962, at *2 (E.D. Pa. June 26, 2007); *Cooper v. Beard*, No. 06-0171, 2006
WL 3208783, at *8 (E.D. Pa. Nov. 2, 2006).  Soto alleges in his complaint that he
filed a grievance related to his claims, and attaches the relevant final appeal decision

from the DOC's Office of Inmate Grievances & Appeals dated December 18, 2008.

(Doc. 1-2.)  In addition, in his brief in opposition to the motions to dismiss, Soto

alleges that he did not receive a final determination of his grievance until December

18, 2008.  (Doc. 26 at 8-9.)  Obviously Soto is arguing that he was adhering to the

dictates of the PLRA, namely that he exhaust his administrative remedies prior to

filing suit in this court.  As explained above, the limitations period for a § 1983 claim

is tolled while a prisoner exhausts his remedies.  Therefore, the court will deny the

Defendants' motion to dismiss on statute of limitations grounds.

### B.   Eighth Amendment Claim

Soto's complaint purports to state a claim for deliberate indifference to his

medical needs in violation of the Eighth Amendment based on Defendants' delay in

treating his right bicep injury.  To demonstrate a *prima facie* case of Eighth

Amendment cruel and unusual punishment based on the denial of medical care, a

plaintiff must establish that the defendant acted with "deliberate indifference to [his]

serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Durmer v.

O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).  There are two components to this

standard: initially, a plaintiff must make an "objective" showing that the deprivation

was "sufficiently serious," or that the result of the defendant's denial was sufficiently

14

serious.  Additionally, the plaintiff must make a "subjective" showing that the

defendant acted with "a sufficiently culpable state of mind."  *Wilson v. Seiter*, 501

U.S. 294, 298 (1991); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir.

2002).  Deliberate indifference may be manifested by an intentional refusal to provide

medical care, delayed medical treatment for non-medical reasons, a denial of

prescribed medical treatment, or a denial of reasonable requests for treatment that

results in suffering or risk of injury.  *Durmer*, 991 F.2d at 68; *see also Spruill v. Gillis*,

372 F.3d 218, 235 (3d Cir. 2004) (quoting *White v. Napolean*, 897 F.2d 103, 109 (3d

Cir. 1990) (finding "deliberate indifference to serious medical needs" standard is met

when pain is intentionally inflicted on a prisoner, where the denial of reasonable

requests for medical treatment exposes the inmate to undue suffering or the threat of

tangible residual injury, or when, despite a clear need for medical care, there is an

intentional refusal to provide that care); *Monmouth Cnty. Corr. Instutional Inmates v.

Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

Further, this test "affords considerable latitude to prison medical authorities in

the diagnosis and treatment of the medical problems of inmate patients.  Courts will

'disavow any attempt to second guess the propriety or adequacy of a particular course

of treatment . . . which remains a question of sound professional judgment.'"  *Little v.*

*Lycoming Cnty.*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (citing *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White*, 897 F.2d at 108-10. *See also Estelle*, 429 U.S. at 105-06 (medical malpractice is insufficient basis upon which to establish an Eighth Amendment violation); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (mere allegations of malpractice do not raise issues of constitutional import).

Turning to the instant complaint, the court initially finds that Soto's allegations cannot support liability against Defendants Klopotoski and Walsh, former

16

Superintendent and Deputy Superintendent, respectively.  Specifically, Soto's allegations, construed liberally, do not support a finding that either of these Defendants would have had personal involvement in the claims alleged in the complaint, as neither is a medical provider.  Moreover, any attempt to allow Soto to amend his complaint against these Defendants would be futile.  Liability cannot be assessed against these Defendants as neither of these individuals has any authority to make treatment decisions concerning Soto's medical care.  *See Durmer*, 991 F.2d at 69 (holding warden and commissioner cannot be considered deliberately indifferent by failing to directly respond to a medical complaint by a prisoner who was receiving treatment by the prison doctors).

Although Soto alleges some facts that indicate that these Defendants may have been aware of his medical concerns, Soto cannot assert liability against these Defendants due to their involvement in reviewing and/or affirming grievance decisions.  First, the filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement.  *Rode*, 845 F.2d at 1208.  Second, mere concurrence in a prison administrative appeal process does not implicate a constitutional concern.  *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983) (holding that administrative review of prison disciplinary hearings is not

17

constitutionally guaranteed and, therefore, plaintiff's claims with respect to the

Program Review Committee's decision did not rise to constitutional significance).

While prisoners have a constitutional right to seek redress of their grievances from the

government, that right is the right of access to the courts, which is not compromised

by the failure of the prison to address grievances. *Wilson v. Horn*, 971 F. Supp. 943,

947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998).  For these reasons stated

above, Defendants Klopotoski and Walsh will be dismissed as parties in this action.

The remaining Defendants are not entitled to dismissal of this action.  First,

reading the complaint liberally, the remaining Defendants may have been personally

involved in Soto's claim asserting a delay of adequate medical care.  Further, the court

finds that Soto has asserted a claim of deliberate indifference to his medical needs

based on his assertion that medical treatment was delayed for non-medical reasons.

*See Durmer*, 991 F.2d at 68; *Spruill*, 372 F.3d at 235.  The ultimate success or failure

of this claim is not before the court on a 12(b)(6) motion, only whether Soto has

properly alleged a cause of action, which he has.  Therefore, Defendants' motions to

dismiss as to this claim will be denied.

**C.**     **State Law Claim of Medical Malpractice**

18

In their motion to dismiss, Medical Defendants assert that Soto also has articulated a pendant state law claim of medical malpractice.  This malpractice claim appears to be premised on the alleged failure of relevant medical personnel to treat Soto's bicep injury in a timely manner.  Medical Defendants have moved to dismiss this pendant state law claim, arguing, in part, that Soto has failed to comply with the requirements of state law in lodging this claim.  Specifically, Medical Defendants claim that Soto has failed to comply with Pennsylvania Rule of Civil Procedure 1042.3 ("Rule 1042.3"), by filing a valid certificate of merit with this malpractice claim.[4]

Rule 1042.3 provides, in pertinent part,

> In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> > (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice

---

[4]  While the court does not necessarily agree that Soto has articulated a claim of medical malpractice, it will address Medical Defendants' argument nonetheless.  Even reading the complaint liberally, it does not appear that Soto is accusing Medical Defendants of negligence or medical malpractice, but is, in fact alleging a violation of his Eighth Amendment rights due to the deliberate indifference to his medical needs.  There is no requirement that Soto file a certificate of merit with this action based on a violation of his Eighth Amendment rights.

or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

* * *

(d) The court, upon good cause shown, shall extend the time for filing a certificate of merit for a period not to exceed sixty days. A motion to extend the time for filing a certificate of merit must be filed by the thirtieth day after the filing of a notice of intention to enter judgment of non pros on a professional liability claim under Rule 1042.6(a) or on or before the expiration of the extended time where a court has granted a motion to extend the time to file a certificate of merit, whichever is greater. The filing of a motion to extend tolls the time period within which a certificate of merit must be filed until the court rules upon the motion.

Pa. R. Civ. P. 1042.3(a), (d). The purpose of the required certificate of merit is to "assure that malpractice claims for which there is no expert support will be terminated at an early stage in the proceedings." *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000).

Rule 1042.3(a) applies to both *pro se* and represented plaintiffs and constitutes a rule of substantive state law with which plaintiffs in federal court must comply. *See*

20

*Iwanejko v. Cohen & Grigsby, P.C.*, 249 Fed. App'x 938, 944 (3d Cir. 2007) (holding that district courts must "appl[y] Rule 1042.3 as substantive state law"); *Paige v. Holtzapple*, No. 1:08-cv-0978, 2009 WL 2588849, at *3 (M.D. Pa. Aug. 19, 2009) (citing *Iwanejko*, 249 Fed. App'x at 944); *Fernandez v. Dept. of Justice*, No. 3:07-cv-01080, slip op. at 10 (M.D. Pa. Sept. 2, 2008) (recognizing that the plaintiff's *pro se* status "is not a viable basis upon which to excuse compliance with Rule 1042.3 or the requirement of com[i]ng forth with expert medical testimony").

Failure to file a certificate of merit under Rule 1042.3(a) or a motion for an extension under Rule 1042.3(d) is fatal unless the plaintiff demonstrates that his failure to comply is justified by a "reasonable excuse." *Perez v. Griffin*, 304 Fed. App'x 72, 74 (3d Cir. 2008); *see also Walsh v. Consol. Design & Eng'g, Inc.*, No. Civ. A. 05-2001, 2007 WL 2844829, at *5 (E.D. Pa. Sept. 28, 2007) ("Rule 1042.3 is subject to equitable considerations and a party who fails to timely file a certificate of merit may be relieved from the requirement where the defaulting party provides a reasonable explanation or legitimate excuse.").

In the instant case, Soto has not provided the court with a certificate of merit required by Rule 1042.3.[5]  As a result, any malpractice claims against Medical Defendants will be dismissed.[6]

### D.     Policy or Custom

In his complaint, Soto alleges that the Bureau of Health Care Services had a policy or custom to avoid the high cost of treating prisoners' medical concerns by delaying surgeries and treatment by outside specialists for so long that such treatments would not be possible.  DOC Defendants provide a cursory argument that Soto has not properly alleged a policy or custom sufficient to create a cause of action pursuant to § 1983.  They claim that Soto has failed to provide "even the slightest shred of evidence that such an absurd policy exists beyond his unabashedly fabricated allegation."  (Doc. 11 at 5.)

---

[5]  In their motion to dismiss, Medical Defendants also assert Pennsylvania Rule of Civil Procedure 1042.6 ("Rule 1042.6") as grounds for dismissal.  Rule 1042.6 provides for judgment of non pros by the Prothonotary against any plaintiff who fails to timely file a certificate of merit. Given the court's dismissal involving the substantive obligation to file a certificate of merit as prescribed by Rule 1042.3, it need not reach Medical Defendants' alternative argument.

[6]  Given that the court will dismiss the negligence claims against Medical Defendants, it need not address Medical Defendants' argument that, if the court dismisses the federal claims against them, it should decline to exercise supplemental jurisdiction over the state law medical malpractice claims against them.

The court's reading of the complaint finds that Soto has alleged particular policies or customs with sufficient specificity to survive a motion to dismiss. Soto has not simply alleged that there was a general policy or custom, but has pointed to specific policies that led to the delay in treatment of his injury. In particular, he has alleged that the Bureau of Health Care Services "implemented a policy or adopted a custom of agreeing not to recommend immediate surgical repairs of traumatic muscle injury, or tendon, to avoid excessive healthcare costs for prisoners." (Doc. 1 at 6.) Here, as is the case with the Eighth Amendment claims against several Defendants, the ultimate success or failure of this claim is not before the court on a 12(b)(6) motion, only whether Soto has properly alleged a cause of action, which he has. Therefore, Defendants' motion to dismiss as to this claim will be denied.

## IV.  **Conclusion**

For the reasons set forth herein, the motion to dismiss will be granted with respect to Soto's claims against Defendants Klopotoski and Walsh's based on their lack of personal involvement, and they will be dismissed from this action. Further, both motions to dismiss will be denied with respect to Soto's Eighth Amendment claim of deliberate indifference to his medical needs. The motions to dismiss will also

be denied with respect to Soto's claim that a policy or custom exists to avoid the high

cost of treating prisoners' medical concerns by delaying surgeries and treatment by

outside specialists for so long that such treatments would not be possible.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  September 27, 2011.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGEL SOTO,** | : | **CIVIL NO. 1:CV-10-02366** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS LESKOWSKY,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## <u>O R D E R</u>

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT**:

1) The motion to dismiss (Doc. 10) is **GRANTED** with respect to Soto's claims against Defendants Michael Klopotoski and Jerome Walsh.

2) Defendants Klopotoski and Walsh are **DISMISSED** as parties in this action.

3) The motion to dismiss (Doc. 10) is **DENIED** with respect to Soto's claims of deliberate indifference to his medical needs against Defendants Bureau of Health Care Services, Ellers, Ginocchetti, Harris, Leskowsky, and Waligun ("DOC Defendants").

4) The motion to dismiss (Doc. 19) is **DENIED** with respect to Soto's claims of deliberate indifference to his medical needs against Defendants Bohinski and O'Brien ("Medical Defendants").

5)  The motions to dismiss (Docs. 10 & 19) are **DENIED** with respect to Soto's claim that a policy or custom exists to avoid the high cost of treating prisoners' medical concerns by delaying surgeries and treatment by outside specialists for so long that such treatments would not be possible.

6) The remaining DOC Defendants and Medical Defendants are directed to file an answer to the complaint within thirty (30) days of the date of this order.


                              s/Sylvia H. Rambo
                              United States District Judge

Dated:  September 27, 2011.